# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **Criminal No.: 26-mj-24** |
| **v.** | : | |
| | : | |
| | : | |
| **JOHN ANTHONY III,** | : | |
| | : | |
| **Defendant.** | : | |

## GOVERNMENT'S MEMORANDUM IN SUPPORT OF PRETRIAL DETENTION

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in support of its request that defendant John Anthony III be detained pending trial of this matter pursuant to 18 U.S.C. § 3142(f)(1)(D) and 3142(f)(1)(E). Mr. Anthony III is charged with Failure to Register as a Sex Offender, in violation of 18 U.S.C. § 2250(b), based upon his unreported five-day trip abroad to Mexico during September 2025. As detailed below, an analysis of the factors set forth in 18 U.S.C. § 3142 leads to the conclusion that detention is the only way to protect the community and to ensure the defendant's future appearance.

## FACTUAL BACKGROUND

On December 5, 2006, John Anthony III ("ANTHONY") was convicted of one count of Attempted First Degree Child Sex Abuse in the Superior Court of the District of Columbia in case number 2006 CF1 2568. The original warrant[1] describes the conduct reported by T.S., the victim in this case as follows, and ANTHONY was charged with one count of First Degre Child Sexual Abuse, in violation of 22 D.C. Code, Section 3008. The defendant pled guilty to one count of

---

[1] There does not appear to be a proffer of facts from the specific plea hearing filed on the docket, and the government does not have the transcripts from the plea hearing in this matter.

Attempted First Degree Child Sex Abuse on August 14, 2006, and was sentenced on December 5, 2006.

On January 4, 2006, around 1035 hours, T.S. was interviewed at the Child Advocacy Center by Forensic Interviewer Lamar Henderson. T.S. was able to distinguish truth vs. lie. T.S identified the defendant as a person named John, who used to hang out with his mother, but was sent away because "He did bad stuff to me and D.W." T.S. described D.W. as his cousin. T.S. informed the interviewer that while his mother was upstairs, he and D.W. were in the kitchen of his home, with the defendant. T.S. stated "John turned me around and grabbed my stuff." T.S. described his "stuff" as his "ding-ding" referring to his penis. T.S. also informed the interviewer that the defendant put the defendant's hands into T.S. pants and grabbed T.S. penis while the defendants hand was going up and down. While this was occurring D.W. was in the kitchen and observed what was happening. T.S. indicated, the defendant forced T.S. to suck the defendant's penis. T.S. advised that he attempted to call his grandfather for help, but the defendant covered his mouth with the defendant's hand. T.S. advised that, "white stuff" came out of the defendant's penis. T.S. also informed the interviewer that the defendant stuck the defendant's penis into T.S. butt. T.S. advised that D.W. wouldn't suck the defendant's penis, but did observe the defendant suck D.W. penis. T.S. was able to distinguish parts of the body utilizing an anatomical drawing.

On November 5, 2008, ANTHONY was convicted of one count of Possessing Material Constituting or Containing Child Pornography in the United States District Court for the District of Columbia in case number 08-cr-081.[2]

As a result of ANTHONY's convictions, he was provided with notice that he was required to register as a sex offender for life every ninety days. Due to ANTHONY's prior convictions, he is a sex offender under the Sex Offender Registration and Notification Act (SORNA) and is required to register pursuant to SORNA.

An inquiry with the District of Columbia lists ANTHONY as compliant in his sex offense registration, most recently registering on November 28, 2025. His next scheduled date for reporting is February 26, 2026. On the form that ANTHONY signed on November 28, 2025, it reminded ANTHONY that "You are required to appear in person to this office before your next scheduled reporting date to … [r]eport international travel plans 21 days prior to departure." His prior sex offender registration signed on August 26, 2025, also reflects the same language and acknowledgement. ANTHONY is required to report international travel plans to the District of

---

[2] The proffer of facts in this case is attached as Exhibit A.

Columbia's Court Services and Offender Supervision Agency (CSOSA) Office of Community Supervision and Intervention Services Sex Offender Registry Unit.

ANTHONY reports that he currently resides in the District of Columbia at XX Halley Place SE, Apt XXX, in Washington, DC.

On September 29, 2025, ANTHONY began his return flight to the United States on flight AM 2608 from a 5-day trip in Mexico. Specifically, ANTHONY flew from Dulles International Airport (IAD) in Sterling, VA to Mexico City, Mexico via Juarez International Airport (MEX) on September 25, 2025, on flight AM 456. ANTHONY was reported to embark on his return flight at Queretaro Intercontinental Airport (QRO) located in Santiago de Queretaro, Mexico on September 29, 2025. ANTHONY arrived on September 30, 2025, at Detroit Metropolitan Wayne County Airport (DTW) in Detroit, MI.

On September 25, 2025, contact was made with the DC Sex Offender Registry, where a Sex Offender Registry Court Supervision Officer verified that ANTHONY was compliant with the registration but did not provide notice of his intent to travel internationally pursuant to the District of Columbia's requirement to do so at least 21 days prior to travel.

U.S. Customs and Border Patrol (CBP) TECS and a Homeland Security Investigations (HSI) incident report confirmed that ANTHONY traveled on these flights utilizing US Passport AXXXXXX80 for entry to Mexico and re-entry to the United States, which is the US Passport associated with John ANTHONY. Further, upon arrival at DTW, ANTHONY was referred to baggage control and was confirmed in person to be John ANTHONY, DOB 06/XX/1987.

According to an HSI Agent, when ANTHONY was referred to baggage control, his phone was also reviewed. A manual review found what the agent described as "questionable images on his phone." The HSI Agent, after releasing ANTHONY to continue his travel to Washington,

D.C., completed a full extraction on his phone and reported that he found numerous CSAM files on the device. The HSI agent also reported that some of the CSAM files appeared to have been distributed by ANTHONY.[3]

The Defendant was arrested on February 10, 2026, outside of XX Kennedy Street NW pursuant to an arrest warrant.  Law enforcement officers made efforts to find ANTHONY at his registered address, XX Halley Place SE, Apt XXX, in Washington, DC, but were unable to locate him at that address.  Utilizing License Plate Reader (LPR) technology, law enforcement officers were able to locate ANTHONY's registered vehicle at the address where he was located.  Open source law enforcement databases indicate the vehicle had been registered to ANTHONY since at least April 9, 2025.  LPR technology indicated that his car had not been near his registered address at least in the prior several months.

On February 11, 2026, law enforcement officers went to XX Halley Place SE, Apt XXX, in Washington, D.C. and knocked on the apartment door.  A man answered the door and indicated to the law enforcement officers that he was living at XX Halley Place SE, Apt XXX, in Washington, DC.  The individual who answered the door indicated that he lived at the apartment and is a renter and identified the person whom he rents from.[4]  He reported that he has lived at the apartment since June 2025.  He indicated that who he identified as the owner of the property does not live at the location and identified John ANTHONY as the brother of the owner of the property. The person who identified himself as the current resident said that ANTHONY did live here before he moved in, but to the best of his understanding, ANTHONY had moved out about a month before he moved in.  The individual also informed law enforcement that ANTHONY did try to move back

---

[3] The phone is still with HSI and has been requested to be sent to the FBI. At this point, the government has not filed any charges related to any alleged material on ANTHONY's phone.

[4] Law enforcement has made efforts to reach out to the person identified as the owner of the property, but as of the time of the filing of this memorandum, has not been successful in reaching that individual.

to the place, but the owner of the property, ANTHONY's brother, had informed the individual that ANTHONY was not allowed to return to the property.

A review of the contact notes with CSOSA Sex Offender Registry Unit indicate that ANTHONY provided information that may have been inaccurate, including continued reporting of his address as XX Halley Place SE, Apt XXX; not reporting any additional addresses where he was staying; indicating he does not own a vehicle on November 17, 2025; and reporting on August 22, 2025, that he did not have a passport.

## PROCEDURAL BACKGROUND

On February 11, 2026, the Defendant appeared for an initial appearance in this matter, and the government requested that he be held pending trial pursuant to 18 U.S.C. § 3142(f)(1)(D) and 3142(f)(1)(E). A detention hearing was set for the same day. The detention hearing was held, and the Court set a continued detention hearing on February 12, 2026.

## APPLICABLE LEGAL STANDARD

When determining if the defendant should remain detained pending trail, the Court must consider the following factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. *See* 18 U.S.C. § 3142(g).

## ANALYSIS

The defendant poses a significant danger to the community if released because of his unwillingness to abide by the conditions of his release in his prior cases and the additional circumstances surrounding his the current alleged offense. Therefore, he should remain detained pending trial.

## A.      Nature and Circumstances of the Charged Offense

In 1996, Congress adopted Megan's Law after "Megan Nicole Kanka, who was 7 years old, was abducted, sexually assaulted, and murdered in 1994, in the State of New Jersey by a violent predator living across the street from her home. Unbeknownst to Megan Kanka and her family, he had been convicted previously of a sex offense against a child."  International Megan's Law to Prevent Child Exploitation and Other Sexual Crimes Though Advanced Notification of Traveling Sex Offenders, PL 114-119, February 8, 2016, 130 Stat 15.  The goal, according to Congress was to "protect children by identifying the whereabouts of sex offenders and providing the means to monitor their activities." *Id.*  In 2006, the Adam Walsh Child Protection and Safety Act of 2006 was passed to "protect children and the public at large by establishing a comprehensive national system for the registration and notification." *Id.*  Specifically, 18 U.S.C. 2250(b) was adopted, according to Congressional records, premised on the findings of Congress that "[t]he commercial sexual exploitation of minors in child sex trafficking and pornography is a global phenomenon. The International Labour Organization has estimated that 1,8000,000 [*sic*] children worldwide are victims of child sex trafficking and pornography each year." *Id.*

ANTHONY knowingly engaged in international travel without reporting this as required under the Sex Offense Registration and Notification Act.  The defendant had signed a paper which clearly articulated the requirement to report any international travel 21 days in advance just a month prior to his international trip.  Even then, when he showed up to register again in November 2025, he did not, after signing once again the requirement to report international travel, indicate that he had forgotten to report his travel in any way.

This is in the context of a report from the HSI agent indicating that there was CSAM present on the device that was on ANTHONY when he deboarded the international flight, including evidence that ANTHONY may have been distributing that CSAM. And, it is in the context of newly identified additional concerns with him potentially violating other registration requirements, including not accurately reporting his address. ANTHONY has continued to report XX Halley Place SE, Apt XXX as his only address; where, based on LPR data related to his car and an interview with an individual who was inside the apartment and indicated that he was the person that lived there – it appears ANTHONY has not lived at XX Halley Place SE, Apt XXX since at least June 2025. ANTHONY is required to report any change in address within 3 days.

His knowing failure to report international travel is made more serious by the surrounding circumstance which indicate continued child exploitation through engagement with CSAM and indications that ANTHONY concealing other information from the CSOSA Sex Offense Registration unit, undercutting the purpose of SORNA which is to ensure that the public is aware of sex offenders in their area and that children are being kept safe.

**B. The Weight of the Evidence Against the Defendant**

The weight of the evidence against the defendant is very strong and weighs in favor of detention. ANTHONY used his passport to board an international flight and was identified as the person who disembarked from the return international flight. Moreover, ANTHONY signed a form just a month prior, which clearly indicated that ANTHONY had a requirement to report international travel 21 days prior. Finally, there is no doubt that ANTHONY is required to register as a life registrant; he has demonstrated his knowledge of that requirement by showing up to register.

A district court must consider the weight of the evidence when assessing whether the defendant is a danger or poses a risk of flight and has broad discretion to determine the relative weight of each of the four Bail Reform Act factors.  *See United States v. Blackson*, No. 23-CR-25 (BAH), 2023 WL 1778194, at *9 (D.D.C. Feb. 6, 2023), *aff'd*, No. 23-3020, 2023 WL 2663034 (D.C. Cir. Mar. 28, 2023) ("First, nothing in the BRA's text requires or alludes to a differing weighing of the factors nor any hierarchy among the factors.").  No factor is categorically of greater or lesser weight than the others.  As the Second Circuit Court of Appeals observed:

> Although § 3142(g) of the Bail Reform Act lists various factors to consider, it says nothing about the relative weight a court should give them when deciding whether to release or detain a defendant. *See generally* 18 U.S.C. § 3142(g). That silence is unsurprising, because the weight given to each factor will inevitably vary from case to case, and might even vary depending on whether the inquiry relates to a defendant's danger or to his risk of flight. What is more, certain factors might interact with one another in a particular case in a way that alters a court's analysis of a defendant's danger to the community or flight risk.

*United States v. Zhang*, 55 F.4th 141, 149-50 (2d Cir. 2022).  In *Zhang*, the Second Circuit found that the district court gave appropriate weight to the second factor – the weight of the evidence – in determining that there was "significant evidence" that Zhang had in fact committed the charged murder.  *Id.* at 150-51.  Affirming the district court's relative reliance on the weight of the evidence in determining dangerousness, the court explained:

> In making a predictive assessment of the defendant's future dangerousness if released into the community, common sense and § 3142(g)(2) aligned with the district court's consideration of the strength of this evidence, especially coupled with the nature of the charged offense. It stands to reason that the more strongly the evidence indicated that the defendant committed the murder, the more likely he poses a danger to the community if released on bail.

The *Zhang* court's analysis has been cited approvingly in the District Court of the District of Columbia in *Blackson*, and its analysis holds true here as well.  *Blackson,* 2023 WL 1778194,

at *9-10. The strength of the evidence strongly supports detention, as it indicates the defendant's unwillingness to abide by supervision requirements.

### C.     History and Characteristics of the Defendant

The defendant's significant criminal history and repeat failures to abide by conditions set by a Court weigh heavily in favor of detention.

The defendant was arrested on February 9, 2006, in 2006 CF1 2568, where he was charged with one count of First-Degree Child Sex Abuse involving the anal penetration of a 10-year-old child. He ultimately pled guilty on August 14, 2006, to Attempted First Degree Child Sex Abuse, and was sentenced on December 5, 2006.

After defendant was placed on probation in 2006 CF1 2568, the defendant was arrested for Assault on a Police Officer in 2007 CMD 8992. He was arrested on April 20, 2007, and was convicted of two counts and sentenced on June 26, 2007.[5]

In addition, while on probation in 2006 CF1 2568, the defendant was required to undergo sex offender treatment. According to the proffer in United States v. John Anthony III, 08-cr-81, defendant had an inconclusive polygraph exam, which prompted an investigation. Defendant denied viewing any pornography but admitted he had access to a computer. In a follow up conversation, the defendant acknowledged viewing child pornography on the computer at his mother's home. A search warrant was conducted on the defendant's home and "a computer, 12 CDs and several pieces of paper documenting passwords and user screen names" were recovered, according to the proffer, attached as Exhibit A. Ultimately, images on a "nude male, approximately eleven years-old, being anally penetrated by an adult male" and "other images

---

[5] The pretrial report notes an arrest in Baltimore, MD on June 16, 2006, for a Theft less that $100 with a disposition date of September 21, 2016.

depict[ing] nude preteen males displaying their genitals" and a "video of a hog-tied preteen boy being forced to provide oral sex to an adult male" were all discovered on ANTHONY's computer. There was also evidence of thousands of deleted images containing CSAM. *Id.* This all was committed while on probation in 2006 CF1 2568, when the defendant had every incentive to abstain from committing crimes.[6]

Defendant appears to have been incarcerated from his arrest on May 23, 2008, until he was released to Supervised Release on December 1, 2016. On July 11, 2017, only 8 months after he was released, the United States Probation Office filed a petition alleging four violations, which included "(1) Defendant's failure to inform his assigned probation officer that he was in possession of an internet capable device after being asked directly, … (2) Defendant failed to submit his device for examination or installation of computer monitoring software, … (3) Defendant making contact with children age 18 or younger … [and] (4) Defendant's failure to participate in a mental health program approved by the Probation Office. *See* ECF No. 27. ANTHONY was found to have committed all four violations, and his probation was revoked. He was sentenced to 11 months incarceration and 240 months supervised release. *Id.*

ANTHONY started a second term of supervised release on June 19, 2018. On January 15, 2020 (only 18 months later) the U.S. Probation Office filed a petition alleging four additional violations. This included "(1) failing to submit to periodic polygraph testing on two occasions; (2) possession an unauthorized cellphone without computer monitoring software; (3) having direct unsupervised contact on multiple occasions with a child he knew to be under the age of 18; and

---

[6] The pretrial report also notes that a warrant was issued in 2006 CF1 002568 while defendant was on pre-trial release for Escape on May 24, 2006, which was executed on June 2, 2006 and a bench warrant on July 11, 2006, which was quashed on August 7, 2006, further supporting that there are no conditions or combinations of conditions that can guarantee the safety of the community or defendant's return to Court.

(4) unsuccessfully being discharged from sex offender treatment." ECF. No 40. The Magistrate Judge found that the defendant had committed violations 2 – 4, and recommended ANTHONY be "incarcerated for 11 months, and that a term of supervised release of 240 months be imposed upon his release from incarceration." *Id.* The defendant was ultimately sentenced to 11 months of incarceration, with no additional term of supervised release.

According to the pretrial report, ANTHONY started a third term of supervised release on September 27, 2021, related to his 2006-CF1-002568 matter. An alleged violation report was submitted on July 28, 2022 (not even one year later). The pretrial report indicates this was for violating "numerous release conditions to include, failure to report to supervising officer as directed, use of dangerous and habit-forming drugs, failure to submit to drug testing, and etc." ANTHONY was sentenced to another term of 11 months incarceration and the US Parole Commission did not impose any further term of supervision. *Id.* According to CSOSA records, the defendant was released on July 7, 2023, this time only with the continued requirement to register as a sex offender.

As mentioned above, there is evidence that indicates that, even outside of the charged conduct in this case, ANTHONY continues not to abide by requirements of supervision or the law. As discussed above, the HSI agent in Michigan reported that there was CSAM present on ANTHONY's device which was obtained when ANTHONY disembarked from an international flight in Detroit, Michigan. Moreover, based on the placement of ANTHONY's registered car and on the statement of an individual who was present at the registration address of ANTHONY on February 11, 2026, it appears ANTHONY may have been concealing other information that he is required to report to CSOSA's Sex Offense Registration team, even though he has been showing up as required every 90 days.

Put simply, ANTHONY is not amenable to supervision and there is nothing in the record that would indicate that release conditions now would be any different.  ANTHONY has been on almost every form of supervision available – pre-trial release in 2006 CF1 2568, probation in 2006 CF1 2568 (with a suspended sentence meant to motivate compliance), supervised release 2006 CF1 2568 and 08-cr-81, and supervision as a required lifetime sex offender registrant.  ANTHONY has violated his terms of release in EVERY situation where he's been given an opportunity to prove he can follow court orders.  Instead, ANTHONY has demonstrated time and time again that he will not follow order of release, no matter the potential consequence or rigidity of structure.

The government submits that ANTHONY's history and characteristics weigh heavily in favor of detention in this case.

### D. The Nature and Seriousness of the Danger to Any Person or the Community

The Sex Offender Registration and Notification Act was created to ensure community safety by ensuring that dangerous sex offenders are required to register critical information, including their workplace, home, and any international travel. When sex offenders purposefully fail to register, it undermines the purpose of SORNA. Moreover, it is evidence of the offender's unwillingness to abide by court orders and supervision requirements.

Here, there is a specific danger to children in the community and online when ANTHONY is not willing to abide by requirements of SORNA.  This danger is clearly demonstrated in that ANTHONY appeared to return from his unreported trip with CSAM on his phone, which is real harm to the child victims who were abused to produce those images.  For example, at least as early as the landmark decision, *New York v. Ferber*, 458 U.S. 747 (1982)*,* the Supreme Court referenced numerous research materials detailing the harm to children as a result of the production and trafficking of child pornography.

[P]ornography poses an even greater threat to the child victim than does sexual abuse or prostitution. Because the child's actions are reduced to a recording, the pornography may haunt him in future years, long after the original misdeed took place. A child who has posed for a camera must go through life knowing that the recording is circulating within the mass distribution system for child pornography."

Shouvlin, Preventing the Sexual Exploitation of Children: A Model Act, 17 Wake Forest L.Rev. 535, 545 (1981). *See also* Child Exploitation 292 ("[I]t is the fear of exposure and the tension of keeping the act secret that seem to have the most profound emotional repercussions")

Moreover, defendant's steps to conceal other information from CSOSA, including where he was staying, and his clear history of violations of release conditions, including prior violations related to contact with minors under 18, reflect the serious potential danger that ANTHONY poses to the community, specifically children in the community.

While a violation of a registration offense with no other context often may not rise to a situation requiring pre-trial detention, this violation in combination with the surrounding circumstances and prior history of non-compliance amplify the danger that ANTHONY presents to the community.

## **CONCLUSION**

For all of the reasons set forth above, a consideration of the evidence in this case and the applicable statutory factors compels the conclusion that the defendant should be detained pending trial because there are no conditions or combination of conditions that could reasonably guarantee the safety of the community (including children online who are victimized every time someone consumes CSAM) or the defendant's return to Court.

Respectfully submitted,

Jeanine Ferris Pirro
United States Attorney

*/s/ Richard Kelley*

Richard Kelley
DC Bar 1026390
Assistant U.S. Attorney
601 D Street, N.W.
Washington, D.C. 20530
Telephone: (202) 834-3571
Email: richard.kelley2@usdoj.gov

# EXHIBIT A

FILED

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SEP 2 2008

CLERK, U.S. DISTRICT COURT
DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA          :          CRIMINAL NO. 08-81 (ESH)
                                  :
            v.                    :
                                  :
JOHN ANTHONY, III                 :
                                  :

GOVERNMENT'S SUBMISSION TO THE COURT IN PREPARATION FOR
THE UPCOMING PLEA HEARING

The United States, by and through its attorney, the United States Attorney for the District of

Columbia, hereby submits the following in preparation for a plea hearing in the instant case.

I.      ELEMENTS OF THE OFFENSE:

        A.      The essential elements of the offense of  Possession of Material Involving Child

                Pornography, in violation of  18 U.S.C. §§ 2252A(a)(5) and 2256 are:

                i.      That the Defendant knowingly received or possessed an item or items of

                        child pornography, and

                ii.     That such item[s] of child pornography had been transported, shipped, or

                        mailed in interstate or foreign commerce, including by computer.

        B.      Definitions:

                i.      The term *child pornography* means any visual depiction including any

                        photograph, film, video, picture, or computer or computer generated image

                        or picture, whether made or produced by electronic, mechanical, or other

                        means, of sexually explicit conduct where the production of such visual

                        depiction involves the use of a minor engaging in sexually explicit conduct

1

IV.    <u>FACTUAL PROFFER IN SUPPORT OF GUILTY PLEA</u>:

If this case were to go to trial, the government's evidence would establish the following beyond a reasonable doubt:

At the time of this offense, defendant John Anthony was on probation in Superior Court case (2006CF1002568) for attempted sexual abuse of a child.  As part of his probation, he was required to undergo sex offender treatment (which often involves polygraph exams).  In the fall of 2007, the defendant submitted to a polygraph test.  The results were deemed "inconclusive" by the polygraph examiner.   As such, Community Supervision Officer ("CSO") Pamela Spivey scheduled a conference with the defendant and CSO Spivey's supervisor, Supervisory Community Supervision Officer ("SCSO") Matthew Kiely.  This conference was held on or about October 5, 2007.  During this meeting, the defendant denied viewing any pornography, but admitted that he had access to a computer.  On or about October 10, 2007, CSO Spivey met with the defendant without SCSO Kiely.  Upon further inquiry, the defendant admitted that he had viewed child pornography on the computer at his mother's home.

On October 12, 2007,  at approximately 6:30 p.m., members of the United States Attorney's Office Criminal Investigation Unit and the Metropolitan Police Department's Internet Crimes Against Children Unit executed a District of Columbia Superior Court search warrant at the defendant's home at                              DC.  After four attempts to gain entry to the apartment, investigators conducted a forced-entry.  Upon entry, investigators encountered the defendant  coming out of the rear bedroom with his hands in the air.  Investigators recovered the computer, 12 CDs and several pieces of paper documenting passwords and user screen names.  Investigator John Marsh asked the defendant about the users of the computer and he stated he had

a separate account under the name of J-Rock, which was password protected. The defendant refused to give investigators his user account password.

Detectives Timothy Palchack and Jonathan Andrews spoke to the defendant. The defendant admitted that he downloaded onto his home computer images of children engaged in sex acts. The defendant said that he could not remember the site he downloaded the images from, and he denied trading these images with anyone.

Investigator Marsh located the J-Rock user account within the computer's "D" Drive, which contained several items of evidence. The "shared" folder is a unique folder created by file sharing software Lime Wire within the J-Rock user account. The shared folder contained 11 images of suspected child pornography which were forwarded to the National Center for Missing and Exploited Children (NCMEC) where they were compared with NCMEC's Child Recognition & Identification System (CRIS) for analysis and review. One of the images, Brian3.jpg, was identified as a known victim of child sex abuse. The Brian3.jpg image depicts a nude male, approximately eleven years-old, being anally penetrated by an adult male. The other images depict nude preteen males displaying their genitals. The shared folder also contained a video of a hog-tied preteen boy being forced to provide oral sex to an adult male.

Investigator Marsh reviewed the "Lost Files" folder recovered by the Encase software as once-deleted files from the computer. Forensic analysis revealed that on October 10, 2007, the J-Rock user deleted 747 files from the computer. Furthermore, on October 12, 2007, between 1:27 pm and 5:31 pm, the J-Rock user deleted approximately 2955 files. These files include the child pornography images and video file described above, as well as additional images of naked preteens.

Anthony used a computer for the possession of the child pornography he possessed, and the

images had been mailed, shipped, or transported through interstate commerce. Furthermore, some of the images of child pornography possessed by Anthony involved prepubescent minors or minors who had not attained the age of 12 years, and some of the images portray sadistic and masochistic conduct.

<u>Limited Nature of Proffer</u>

This proffer of evidence is not intended to constitute a complete statement of all facts known by John Anthony or the government, but is instead a minimum statement of facts intended to provide the necessary factual predicate for the guilty plea. The facts either were provided by John Anthony or were otherwise known to the government. The limited purpose of this proffer is to demonstrate that there exists a sufficient legal basis for Anthony's plea of guilty.

Respectfully submitted,

JEFFREY TAYLOR
United States Attorney

Catherine K. Connelly
Assistant United States Attorney
Major Crimes Section, Mass. Bar No. 649430
555 4th Street, N.W., # 4844
Washington, DC 20530
(202) 616-3384; Fax: 353-9414

5

## DEFENDANT'S ACCEPTANCE

I have read the above proffer and have discussed it with my attorney, Carlos Vanegas, Esquire. I fully understand the proffer and agree to it without reservation. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this proffer fully. I am pleading guilty because I am in fact guilty of the offenses describe above.

Date: _9-2-08_

John Anthony
Defendant

6